THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

TD Bank, N.A.                          *
1 Portland Square                      *
Portland, ME 04112                     *
                                       *      C.A. No.
          Plaintiff,                   *
                                       *
     v.                                *
                                       *
Geryl Pearl                            *
2728 32nd Street, N.W.                 *
Washington, DC 20008                   *
                                       *
          Defendant.                   *

*********************************************************

## COMPLAINT

Plaintiff, TD Bank, N.A., sues Defendant, Geryl Pearl, and states as follows:

### NATURE OF THE CASE

1.       TD Bank is suing Geryl Pearl to recover from her the value of fraudulent transfers she directly or beneficially received from the late Frank H. Pearl, her husband.  These fraudulent transfers have thwarted and will thwart TD Bank from collecting sums owed to it under Frank Pearl's guaranty of two loan facilities extended by TD Bank that are in default.  The first facility was extended to Perseus L.L.C. on September 30, 2010 in the face amount of $17,500,000.  This facility was restructured into a credit extension to Perseus Holdco L.L.C., as parent of Perseus, on March 13, 2012 in the face amount of $16,250,000.  The fraudulent transfers:

          (a)      were made by Frank Pearl with the actual intention to hinder, delay, and defraud creditors;

          (b)      were made by Frank Pearl for less than reasonably equivalent value in exchange for the transfer while Frank Pearl was engaged or was about to engage in a business or

transaction for which his remaining assets were unreasonably small in relation to the business or transaction;

        (c)     were made by Frank Pearl intending to, believing he would, or where he should have reasonably believed he would incur debts beyond his ability to pay the debts as they became due; or

        (d)     were made by Frank Pearl without receiving a reasonably equivalent value in exchange for the transfer when he was insolvent or became insolvent as a result of the transfer.

       In this suit, TD Bank seeks a judgment against Geryl Pearl, as the recipient or beneficiary of the fraudulent transfers, for the amount owed to it by Frank Pearl under his guaranty.  The value of the fraudulent transfers at the time of the transfers far exceeds the amount owed to TD Bank.

       2.     Because many of the relevant documents and much of the relevant information pertaining to the claims raised in this Complaint are within the control of the Defendant and her agents or third parties, such as banks and financial institutions, TD Bank has not had access to these relevant documents and this relevant information prior to filing this Complaint.  Many of the allegations in this Complaint are, for this reason, made on information and belief based on the circumstances of which TD Bank is aware.  TD Bank will require discovery and the subpoena power of this Court to obtain the relevant documents and information that both will permit full particularization and proof of the allegations that have been made on information and belief.

## SUBJECT MATTER JURISDICTION

3.     TD Bank is a national banking association whose Articles filed with the Comptroller of the Currency list Delaware as its place of business and whose actual-principal-place of business is located in Maine.  TD Bank is a citizen of Delaware and of Maine.

4.     Geryl Pearl is a citizen of the District of Columbia.

5.     The amount in controversy exceeds, exclusive of interest and costs, the sum of $75,000.

6.     Subject matter jurisdiction exists under 28 U.S.C. § 1332(a) based on diversity of citizenship and amount in controversy.

## ALLEGATIONS OF FACT APPLICABLE TO ALL CLAIMS

### Background

7.     Frank Pearl was an attorney who practiced sophisticated-commercial-real-estate law and finance in the District of Columbia.  He began with the now-defunct firm of Lane & Edson after graduating from American University law school in 1969.  He then embarked in 1983 on a career in private equity and finance, first with Wesray Capital Corporation and then in the early 1990's with his own organization, known colloquially as the Perseus Group.  Frank Pearl was a knowledgeable and sophisticated legal professional who understood matters relating to the titling of real and personal property, the effect this titling would have upon creditors, and methods of placing assets beyond the reach of creditors.  Frank Pearl also was a knowledgeable and sophisticated-financial professional who understood matters relating to finance, credit, and financial statements.  Besides his own expertise, Frank Pearl retained legal and financial professionals to assist him in his various endeavors and in acquiring and structuring ownership of his assets so as to place them beyond the reach of his creditors.

8.      As will be further described, Frank Pearl understood from the beginning that he would have to guaranty obligations to financial institutions as part of his operation of the Perseus Group. He also understood that these financial institutions would rely on his personal-financial statements and the assets disclosed on the financial statements in making a decision to extend credit that was based in whole or part on his guaranty. On information and belief, Frank Pearl, from 1990 forward, decided to include assets on his personal financial statements that he did not own or hold title to in his individual name to induce financial institutions to extend credit without having these assets exposed to the claims of these creditors. The last allegation is made on information and belief because TD Bank does not have copies of all of the financial statements Frank Pearl disseminated to his creditors, which are in the sole possession of Defendant or her agents and the financial institutions receiving them. TD Bank will require discovery and the subpoena power of the Court to obtain copies of these financial statements.

9.      Over the course of his career, beginning in the 1990s, Frank Pearl acquired and structured his ownership of assets with a view and intention of making these assets invulnerable to the claims of his creditors while at the same time disclosing these assets to his creditors as evidence of his ability to repay his debts to them.

10.     Frank Pearl learned that he had lung cancer in November of 2011 and that, unless a very aggressive form of treatment was successful, he did not have long to live. Frank Pearl died of lung cancer on May 4, 2012 while at Johns Hopkins Hospital. On information and belief, Frank Pearl knew at the time he effected many of the transfers described in this Complaint that he was afflicted by a fatal disease that left him only a short, finite time to live. Frank Pearl concealed his condition and the seriousness of this condition from TD Bank and, on information and belief, from other creditors. Allegations in this paragraph have been made on information

4

and belief because TD Bank does not have access to Frank Pear's medical records or his communications with other creditors and will require discovery and the subpoena power of the Court to obtain the relevant information.

11.     Geryl Pearl is the widow of Frank Pearl.  At all times relevant to this case, Geryl Pearl was married to Frank Pearl.  On information and belief, Geryl Pearl was not gainfully employed during her marriage to Frank Pearl and did not earn or generate significant income on her own and apart from Frank Pearl.  On information and belief, Geryl Pearl did not own prior to Frank Pearl's death significant assets attributable to any source other than her marriage to Frank Pearl and the income he earned.  All of the assets described in this Complaint that have vested directly or beneficially in Gerly Pearl were acquired solely with funds earned by Frank Pearl. The allegations made in this paragraph on the basis of information and belief are so made because the information and documents are within the sole possession of Geryl Pearl, and TD Bank has no access to this information or those documents other than through discovery in this case.

12.     Geryl Pearl is the Personal Representative of Frank Pearl's estate in the probate proceeding opened in the District of Columbia. See *In re Frank Pearl*, 2012 Adm. 000568 (Probate Division, Superior Court of the District of Columbia).  She also is the principal beneficiary of his estate under the terms of the will being probated in this proceeding.  The probate proceeding was opened as an unsupervised, abbreviated probate.  The probate estate, given the creditor claims that have been filed and the transfers of assets by Frank Pearl described in this Complaint, is grossly insolvent.  Absent the fraudulent transfers described in this Complaint, the Pearl Estate would have received the fraudulently transferred property and would have sufficient assets and resources to pay TD Bank, as a creditor of the estate, in full.  TD Bank

has requested standard probate and may request judicial supervision of the probate because of the fraud described in this Complaint.

13.     Perseus, L.L.C. is a Delaware limited liability company headquartered in the District of Columbia. Perseus managed private equity funds for the investors that owned the funds and derived revenue and income from fees paid by the private equity funds or the companies owned by the private equity finds to it. Perseus operated under the direction and control of Frank Pearl, who at all relevant time was the 100% owner of Perseus either directly or indirectly through other entities owned by Frank Pearl.

14.     Perseuspur, L.L.C. is a Delaware limited liability company headquartered in the District of Columbia. Perseuspur was the parent of Perseus and the holder of all of the membership interests of Perseus prior to March 13, 2012, when it became the sole member of Perseus Holdco, L.L.C. on March 13, 2012. At that time Holdco, another Delaware limited liability company headquartered in the District of Columbia, became the sole member and owner of Perseus. Frank Pearl owned 72.9 % of the membership interests in Perseuspur, with the other 27.1% being owned by Rappahannock Investment Company, a Delaware corporation owned by Frank Pearl.

15.     On information and belief, the Perseus Trust is an *inter vivos* trust created by Frank Pearl on December 27, 2011 for the benefit of Geryl Pearl, the sole beneficiary, to receive assets Frank Pearl wanted to place beyond the reach of his creditors upon his death. The allegations in this paragraph have been made on information and belief because TD Bank's numerous requests for a copy of the trust agreement of the Perseus Trust have been ignored and it has not been provided with a copy of the trust agreement or of documents evidencing the

transfer of assets to it. The facts alleged in this complaint are based on oral statements made by representatives of Geryl Pearl to representatives of TD Bank.

**The Original TD Bank Loan**

16.    On September 30, 2010, TD Bank extended a $12.5 million Reducing Line of Credit and a $5 million Working Capital Line of Credit to Perseus.  The two loan facilities were represented by a Credit Agreement, a Reducing Line Note, and a Working Capital Line Note. Exhibits 1, 2, and 3 are authentic copies of the Credit Agreement, the Reducing Line Note, and the Working Capital Line Note.

17.    TD Bank was unwilling to extend the Reducing Line of Credit and the Working Capital Line of Credit to Perseus on the basis of its credit alone.  For this reason, TD Bank required the unconditional guaranty of Frank Pearl, who was at the time the holder, directly or indirectly through Rappahannock Investment Company and Perseuspur, of all of the membership interests of Perseus.  Exhibit 4 is an authentic copy of the Guaranty Agreement executed by Frank Pearl.

18.    As part of the loan approval process, TD Bank required Frank Pearl to provide it with a personal-financial statement.  To satisfy this requirement and to demonstrate his ability to satisfy his guaranty obligation if the guaranty were called, Frank Pearl provided TD Bank with his personal-financial statement, including a balance sheet showing his assets and liabilities, as of December 31, 2009.  The balance sheet stated that Frank Pearl owned in his own name six parcels of residential-real property worth $33,500,000, owned various antiques and art work worth $65,000,000, and held interests in the private equity funds managed by Perseus worth $351,820,000.  Based on the financial statement he provided TD Bank, Frank Pearl owned in his own name assets worth $449,500,000 that were available to satisfy his obligation under the

guaranty. After taking into account various liabilities, Frank Pearl reported an overall net worth of $423,949,757.

19.    When Frank Pearl provided his financial statement to TD Bank, he signed an acknowledgment that TD Bank was relying on the information in the financial statement in making a decision whether or not to extend credit. Specifically, Frank Pearl acknowledged, in pertinent part:

> Representations and Warranties
>
> The information contained in this statement is provided to induce TD Bank to extend or to continue the extension of credit to the undersigned or to others upon the guarantee of the undersigned. The undersigned acknowledge and understand that TD Bank is relying on the information provided herein in deciding to grant or continue credit or to accept a guarantee thereof. Each of the undersigned represents, warrants and certifies that the information provided herein is true, correct and complete. Each of the undersigned agrees to notify TD Bank immediately and in writing of any change in name, address, or employment or of any material adverse change (1) in any of the information contained in this statement or (2) in the financial condition of any of the undersigned or (3) in the ability of any of the undersigned to perform its (or their) obligations to TD Bank. In the absence of such notice or a new and full written statement, this should be considered as a continuing statement and substantially correct. …

20.    In Section 6(b) of the Credit Agreement, Frank Pearl represented and warranted that all of the information on his financial statement was correct and complete and fairly represented his financial position and that no material adverse change had occurred between the date of the financial statement and the date of the Credit Agreement. This Section reads in pertinent part:

> The Guarantor represents and warrants that all financial statements and information delivered to the Lender by the Guarantor in connection with this Agreement are correct and complete and present fairly the financial condition and reflect all known liabilities, contingent or otherwise, of Guarantor as of the dates of such financial statements and information, and since such

dates, no material adverse change in the assets, liabilities, financial condition, business or operations of the Guarantor has occurred.

Exhibit 1 at page 7.

Then, in Section 6(g), Frank Pearl represented and warranted that he had good and marketable title to his assets, meaning those assets reflected on the financial statements.

21.      Frank Pearl also provided TD Bank with appraisals from two-art-auction houses as to the value of works of antiques and art he owned that were to support Frank Pearl's guaranty of the extension of credit to Perseus. Each of these appraisals stated that they were appraising the property of Frank Pearl.

22.      At the time TD Bank made the loan to Perseus, as guaranteed by Frank Pearl, Perseuspur, L.L.C. was the parent of Perseus and the holder of all of the membership interests of Perseus. Frank Pearl owned 72.9 % of the membership interests in Perseuspur, with the other 27.1% being owned by Rappahannock Investment Company, a Delaware corporation owned by Frank Pearl.

23.      After the September 30, 2010 loans were closed, Frank Pearl, as required by the Credit Agreement, provided TD Bank with a financial statement as of 12/31/10. This personal financial statement included a balance sheet showing his assets and liabilities, as of December 31, 2010. The balance sheet stated that Frank Pearl owned six parcels of residential-real property worth $33,000,000, owned various antiques and art work worth $65,000,000, and held interests in the private-equity funds managed by Perseus worth $317,705,000. Based on the financial statement Frank Pearl provided TD Bank, he owned in his own name assets worth $415,000,000 that were available to satisfy his obligation under the guaranty. After taking into account various liabilities, Frank Pearl reported an overall-net worth of $380,718,458.

## The Restructured TD Bank Loan

24.     After the original TD Bank loan was made, Frank Pearl requested that TD Bank restructure the loan by permitting him to create Holdco as a new holding company for Perseus and to make Holdco the borrower instead of Perseus.  Frank Pearl agreed to continue his guaranty in effect.  The stated reason given by Frank Pearl to TD Bank for the restructure was for Frank Pearl to avoid having to make public his financial statement under the Dodd-Frank Wall Street Reform and Consumer Protection Act that was signed into law on July 21, 2010.  TD Bank at this time does not know if Frank Pearl would have been required to discloses his financial statement under the Dodd-Frank Act if the TD Bank loans were not restructured or whether this reason was mere pretext to camouflage Frank Pearl's actual purpose for requesting the restructuring or whether Frank Pearl did not want to make public his financial statement because doing so would have required him to make an honest and complete disclosure of his personal-financial situation, including the fraudulent transfers that are the subject of this Complaint.  From a retrospective viewpoint, TD Bank believes and therefore avers that the actual purpose of the requested restructure was to remove TD Bank as a direct creditor of Perseus so that the Perseus Trust could operate Perseus free of any collection and enforcement efforts by TD Bank.

25.     On March 13, 2010, TD Bank restructured the existing credit facilities by extending an $11,250,000 Reducing Line of Credit and a $5 million Working Capital Line of Credit to Holdco, which became the borrower in place of Perseus.  The credit facilities were represented by a Credit Agreement, a Reducing Line Note, and a Working Capital Line Note. The credit facilities to Perseus were terminated pursuant to a Termination Agreement dated

March 13, 2012.  Exhibits 5, 6, 7, and 8 are authentic copies of the Credit Agreement, Reducing Line Note, Working Capital Line Note, and Termination Agreement.

26.    Because TD Bank was unwilling to extend credit to a newly formed-holding company with no business or operations and whose only source of funds would be distributions from Perseus, TD Bank required Frank Pearl to unconditionally guaranty the new-loan facilities to Holdco, just as he had done with Perseus.  To satisfy this requirement, Frank Pearl executed a Guaranty Agreement dated March 13, 2012.  Exhibit 9 is an authentic copy of the Guaranty Agreement.

27.    In agreeing to extend the credit facilities to Holdco and terminate and cancel the credit facilities of Perseus, TD Bank relied on the credit and assets of Frank Pearl, as revealed on the financial statements he provided TD Bank.  In Section 6(b) of the Credit Agreement, Frank Pearl again represented and warranted that the information on the financial statements was correct and complete.  As this section states:

> The Guarantor represents and warrants that all financial statements and information delivered to the Lender by the Guarantor in connection with this Agreement are correct and complete and present fairly the financial condition and reflect all known liabilities, contingent or otherwise, of Guarantor as of the dates of such financial statements and information, and since such dates, no material adverse change in the assets, liabilities, financial condition, business or operations of the Guarantor  has occurred.

Then, in Section 6(g), Frank Pearl again represented and warranted that he had good and marketable title to his assets, meaning those assets reflected on the financial statements.

### The Total Amount Due TD Bank

28.    Frank Pearl's death on May 4, 2012 constituted an event of default under both the September 30, 2010 and March 13, 2012 Credit Agreements.  In addition, Holdco, at the direction of Parmley and Aiello, as the trustees of the Perseus Trust, ceased making the payments

required on the two-credit facilities and committed payment defaults. These payment defaults

included failure to pay interest, failure to reduce the reducing line of credit from $11,250,000 to

$7,200,000 as of June 1, 2012 and failure to repay the Working Capital Line of Credit at its

maturity on June 30, 2012. Other defaults included failure to submit information required by

covenants in the Credit Agreement. TD Bank noticed the default on June 8, 2012. Exhibit 10 is

an authentic copy of the notice of default.

    29.    As of July 13, 2012, the total amount due TD Bank is as follows:

| Note # | Principal Balance | Accrued Interest | Late Fees | Payoff | Interest Rate |
|--------|-------------------|------------------|-----------|--------|---------------|
| 1311828-9001 | 11,250,000.00 | 102,656.25 | 2,615.63 | 11,355,271.88 | 4.50% |
| 1311828-9002 | 5,000,000.00 | 45,625.00 | 229.54 | 5,045,854.54 | 4.50% |
| **TOTALS** | **16,250,000.00** | **148,281.25** | **2,845.17** | **16,401,126.42** | |

Interest accrues on the unpaid principal balance at the annual rate of 4.5% from July 13,

2012. In addition, TD Bank under the terms of the Credit Agreements, is entitled to recover all

attorneys' fees and litigation expenses incurred by it in enforcing collection under the loan

documents and guaranties of the amounts due to it, including the reasonable attorneys' fees and

litigation expenses incurred in this suit and in the probate proceeding.

**The Eagle Bank Loan**

    30.    Based on information and belief, Eagle Bank extended three loans to Frank Pearl

directly or that were guarantied by Frank Pearl, two on August 20, 2010 and one on December 5,

2011. The loans matured on May 5, June 30, and August 20, 2012 and have unpaid balances of

$5,051,458.93 and $5,059,583.33 (for the two loans made on August 20, 2010), and

$1,007,180.55, aggregating $11,118,222.31 as of June 18, 2012. TD Bank makes this allegation

based on information and belief and on a claim filed by Eagle Bank in the probate proceeding

because the specific facts relating to these credit facilities lie within the possession of Defendants and their agents and Eagle Bank. Defendants and their agents and Eagle Bank have refused to share specific information with TD Bank, which can only obtain that information through discovery and the subpoena power of this Court.

31.     On information and belief, Frank Pearl provided Eagle Bank with false and misleading financial statements to induce it to make loans it would not have made had it been given honest and accurate financial statements.

### The Massachusetts Mutual Loan

32.     On October 22, 2004, Massachusetts Mutual Life Insurance Company entered into a Securities Purchase Agreement with Perseuspur pursuant to which Mass Mutual would purchase from Perseuspur Senior Secured Notes in the face amount of $25 million and due on September 12, 2012. The Senior Secured Notes were secured by a security interest in Perseuspur's membership interest in and right to receive distributions from Perseus. Frank Pearl did not guaranty the Mass Mutual facility but his ability to receive distributions from Perseuspur were subject to Mass Mutual's prior rights. As part of the March 13, 2012 transaction between TD Bank, Holdco, and Perseus, Mass Mutual consented to Holdco owning all of the membership interests in Perseus formerly owned by Perseuspur and for Perseuspur to become the sole member of Holdco but retained its security interest in the membership interest in and right to distributions from Perseus that had been owned by Perseuspur. As of January 1, 2012, Mass Mutual was owed $17,541,658.

### TD Bank Discovers Frank Pearl's Fraud

33.     At a meeting held on June 14, 2014 at the offices of Arnold & Porter, LLP, TD Bank was given information that, if true, meant that it had been defrauded by Frank Pearl into

making the original loan and the restructured loan.  TD Bank was told by counsel for Geryl Pearl

that (a) all of the real property reported by Frank Pearl on the financial statements he provided

TD Bank was not owned by him individually but was owned prior to his death by him and Geryl

Pearl as tenants by the entireties and now, as a result of Frank Pearl's death, by Geryl Pearl

individually and (b) all of the art work reported by Frank Pearl on the financial statements he

provided TD Bank was not owned by him individually but was owned prior to his death by him

and Geryl Pearl as tenants by the entireties and now, as a result of Frank Pearl's death, by Geryl

Pearl individually.  TD Bank also was told that on December 27, 2011, Frank Pearl created the

Perseus Trust, a trust in which Geryl Pearl is the beneficiary, and conveyed to it all of his

ownership interests in the private equity funds managed by Perseus and other property owned by

Frank Pearl.  If the real estate and antiques and art work were held as tenants by the entireties

and if the Perseus Trust now holds all of Frank Pearl's interest in the private equity funds and

other property interests in property owned by Frank Pearl, the financial statements given to TD

Bank by Frank Pearl and the representations and warranties made by Frank Pearl in the Credit

Agreements and on the financial statements were knowingly false when given, and were made

by Frank Pearl to TD Bank to induce it to make loans and take actions that it would not have

made or taken had it been given true and honest information.  TD Bank reasonably relied on the

truth and accuracy of the information in the financial statements and in the truth and accuracy of

the representations and warranties, in extending the credit facilities, to its damage and detriment.

      34.    If the financial statements Frank Pearl provided TD Bank are false because they

list assets as belonging to and titled in the name of Frank Pearl when they were not, Frank Pearl

committed a Federal felony by submitting a false statement to a Federally-insured financial

institution to obtain an extension of credit from that institution.  18 U.S.C.A. § 1014 (Anyone

knowingly making false statement to influence action of Federally insured institution in

extending credit subject to fine of not more than $1 million, imprisonment for not more 30 years,

or both); 18 U.S.C.A. § 1344 (Anyone obtaining credit from a financial institution by means of

"false or fraudulent pretenses, representations, or promises" subject to fine or up to $1 million,

imprisonment for up to 30 years, or both).

35.     On information and belief, over the course of his career as controlling person of

the Perseus organization, Frank Pearl has provided false and misleading financial statements to

banks and other financial institutions besides TD Bank to obtain credit, reporting as assets held

by him in his own name, assets that were not titled in his name. Frank Pearl's purpose in

providing these false and misleading financial statements was to induce the banks and financial

institutions to make loans and extend credit they would not otherwise have extended.

**The Perseus Trust**

36.     On information and belief, Frank Pearl created the Perseus Trust on December 27,

2011 and conveyed to it all of his interests in (a) Perseus, (b) Perseuspur, (c) Rappahannock, (c)

all of the private equity funds managed by Perseus, including but not limited to Perseus Partners

VII, L.P., Perseus Capital LLC, Perseus Acquisition/Recapitalization Fund, LLC, Perseus 2000

LLC, Perseus Market Opportunity fund, L.P., Perseus 2000 Expansion, LLC, and Perseus-Soros

BioPharmaceutical Fund, LP, and other assets and property owned by Frank Pearl.  Bruce

Parmley, Bruce Parmley (a partner in Hogan Lovells USA LLP) and Thomas Aiello (a principal

in Alvarez & Marsal Taxand LLC), both long-time associates of Frank Pearl, were named

trustees.  Geryl Pearl is the sole beneficiary.  The allegations in this paragraph are on information

and belief because the trust agreement and specific information about the creation and funding of

the Perseus Trust are in the exclusive possession of Defendant and her agents, who as of the

filing of this Complaint have not provided TD Bank with a copy of the trust agreement or any other documents relating to it or specific information about its creation or funding, despite requests by TD Bank.  TD Bank requires discovery to obtain the relevant documents and information, which are in the exclusive possession of Defendants.

37.    At the time the Perseus Trust was created, on information and belief, Frank Pearl knew he had lung cancer and a short time to live.  This allegation is made on information and belief because the information about Frank Pearl's medical condition and prognostication are within the sole possession of Geryl Pearl and Frank Pearl's physicians.  TD Bank cannot obtain information on this allegation other than by discovery and the use of the Court's subpoena power.

38.    The transfer of assets to the Perseus Trust contingent upon Frank Pearl's death occurred on December 27, 2011, approximately 24 months after Frank Pearl became obligated on a guaranty of $17.5 million of credit extended by TD Bank on an unsecured basis on September 30, 2010 and approximately two months before Frank Pearl obligated himself on March 13, 2012 on a guaranty of $16,250,000 of credit extended by TD Bank on an unsecured basis.  On the date of Frank Pearl's death, the transfer of the assets to the Perseus Trust became so far perfected that a creditor on a simple contract could not acquire a judicial lien that would be superior to the interest of the trustees of the Perseus Trust.  The value of the assets transferred on the date of Frank Pearl's death exceeded that amounts owed to TD Bank on his guaranty and for attorneys' fees and litigation expenses.

**The Art Work**

39.    Frank Pearl's financial statements provided to TD Bank showed that he personally owned antiques and works of art having a fair market value of $65 million.  Based on

his representations in the financial statements he supplied TD Bank, his representations and

warranties in the Credit Agreements he signed, the appraisals he provided TD Bank, and his

conversations with TD Bank representatives incident to the extensions of credit, Frank Pearl was

the sole owner of the art works. On information and belief, based on statements made by Geryl

Pearl through counsel, Frank Pearl conveyed the works of art from ownership solely by him to

ownership by him and Geryl Pearl at an unknown date or dates but without consideration. This

allegation is made on information and belief because the information and documentation about

the acquisition and transfer and current ownership of the antiques and art is within the sole

possession and exclusive control of Geryl Pearl and her agents and various sellers of the antiques

and art. TD Bank will require discovery and the subpoena power of this Court to obtain the

necessary documents and information to ascertain the ownership status and ownership history of

the antiques and art.

## The Real Property

## 2728 32nd St., N.W., Washington D.C.

40.     On May 1, 1991, David Gottfried, sole acting trustee of the E&G Investment

Trust, conveyed to Bruce E. Parmley, as Trustee for The F&G Revocable Investment Trust under

an unrecorded trust agreement dated April 26, 1991, that parcel of real property in the District of

Columbia known generally as 2728 32nd Street, N.W., Washington D.C. pursuant to a deed of

trust of that date recorded with the Recorder of Deeds of the District of Columbia as Instrument

No. 9100021890.

41.     Although Frank Pearl was not individually in title to the 32nd Street property, he

reported on the financial statements that he gave TD Bank that he was the owner of this property

and that it had a value of $10 million. Frank Pearl represented and warranted in the Credit

17

Agreements that these financial statements listing him as the owner of the property were correct knowing that they were not.

**8 Jane's Cove Road, Edgartown, Massachusetts**

42.     On March 6, 2000, Frank Pearl executed a Durable Limited Power of Attorney appointing S. Fain Hackney as attorney in fact to do all things necessary regarding the purchase of a property on Jane's Cove Road, Edgartown, Massachusetts pursuant to a Purchase and Sale Agreement between Frank Pearl (but not Geryl Pearl) and The Quanomica Company, LLC, and to effectuate obtaining a mortgage loan from Bank of America, N.A. in the amount of $2,625,000.  The Power of Attorney was recorded among the Land Records of Dukes County, Massachusetts.

43.     On March 8, 2000, S. Fain Hackney recorded a Declaration of Trust Establishing Jane's Cove Realty Trust among the land records of Dukes County, Massachusetts.  The Declaration does not identify the grantor nor the beneficiary of the trust.

44.     On March 8, 2000, the Quanomica Company, LLC executed a deed to the Jane's Cove Road property to S. Fain Hackney, as Trustee of the Jane's Cove Realty Trust, in consideration of the payment of the purchase price in the contract between The Quanomica Company, LLC and Frank Pearl.  The deed was recorded among the land Records of Dukes County, Massachusetts.

45.     On April 9, 2012, Hackney, as Trustee of the Jane's Cove Road Realty Trust, conveyed the property to Michael and Jenifer Corbo by Quitclaim deed of that date for a price of $3,750,000.

46.     On information and belief, the $3,750,000, less the amount required to satisfy the outstanding mortgages and the seller's transaction costs, was distributed to Geryl Pearl, either directly or to Frank and Geryl Pearl and then to Geryl Pearl.

47.     Although Frank Pearl was not individually in title to the Jane's Cove Road property, he reported on the financial statements that he provided TD Bank that he was the owner of this property and that it had a value of $6 million. Frank Pearl represented and warranted in the Credit Agreements that these financial statements listing him as the owner of the property were correct knowing that they were not.

### 1237 North Lake Way, Palm Beach, Florida

48.     On May 9, 2000, North Ocean Properties, Inc. executed a deed to Frank H. Pearl and Geryl T. Pearl, husband and wife, for the property known as 1237 North Lake Way, Palm Beach, Florida.

49.     Although Frank Pearl was not individually in title to the North Lake Way property, he reported on the financial statements that he gave TD Bank that he was the owner of this property and that it had a value of $6.5 million. Frank Pearl represented and warranted in the Credit Agreements that these financial statements listing him as the owner of the property were correct knowing that they were not.

### 354 Chilean Avenue, Palm Beach, Florida

50.     On July 27, 1984, Joan E. Ross, Personal Representative, executed a deed to Frank H. Pearl and Geryl T. Pearl, husband and wife, for the property known as 354 Chilean Avenue, Palm Beach Florida.

51.     On April 27, 2010, Frank Pearl and Geryl Pearl, as tenants by the entireties, by deed of that date, conveyed the property to Geryl Pearl, individually.

52.     Although Frank Pearl was not individually in title to the Chilean Avenue property, he reported on the financial statements that he gave TD Bank that he was the owner of this property and that it had a value of $800,000.  Frank Pearl represented and warranted in the Credit Agreements that these financial statements listing him as the owner of the property were correct knowing that they were not.

### 1954 N. Poes Road, Flint Hill, Virginia

53.     On January 18, 1990, John Michael Kaufman, Trustee, executed a deed to Frank H. Pearl and Geryl T. Pearl, husband and wife, for the property known as 1954 N. Poes Road, Flint Hill, Virginia.

54.     Although Frank Pearl was not individually in title to the N. Poes Road property, he reported on the financial statements that he gave TD Bank that he was the owner of this property and that it had a value of $9.5 million.  Frank Pearl represented and warranted in the Credit Agreements that these financial statements listing him as the owner of the property were correct knowing that they were not.

### 16001 W. Kino Drive, Surprise, Arizona

55.     On April 27, 1999, Del Webb Communities, Inc. executed a deed to Frank H. Frank Pearl and Geryl T. Pearl, husband and wife, as community property, for the property known as 16001 W. Kino Dr., Surprise, Arizona.

56.     Although Pearl was not individually in title to the W. Kino Drive property, he reported on the financial statements that he gave TD Bank that he was the owner of this property and that it had a value of $200,000.  Pearl represented and warranted in the Credit Agreements that these financial statements listing him as the owner of the property were correct knowing that they were not.

**Miscellaneous Property**

57.    On information and belief, Pearl owned sundry property and assets in addition to the real and personal property previously described, including bank and brokerage accounts. Pearl disposed of this property prior to his death either to Geryl Pearl or to trusts of which she was a beneficiary.  On his 2009/2010 financial statements, Frank Pearl scheduled as being held in his name cash and cash equivalents of $5,360,540 and $7,482,680, marketable securities of $81,879 and $243,065, and miscellaneous personalty of $2 million.  The allegations in this paragraph are made on information and belief because the information and documents relating to these allegations are in the sole possession and control of Defendants and third parties.  TD Bank will require discovery and the subpoena power of the Court to obtain the information and the documents.

## CLAIMS

### The Perseus Trust

### Count 1
### (Intent To Hinder, Delay, or Defraud)

58.    TD Bank incorporates by reference the allegations contained in the prior paragraphs of this Complaint.

59.    The creation of the Perseus Trust on December 27, 2011 and the transfer of assets held by Frank Pearl to it for the benefit of Geryl Pearl were done with the actual intent to hinder, delay, or defraud Frank Pearl's creditors, including TD Bank, as proscribed by D.C. Code § 28-3104(a)(1).

60.    Substantial badges of fraud incident to the creation of the Perseus Trust and the transfer of assets to it exist and demonstrate Frank Pearl's fraudulent intent.  These badges of fraud include:

a.      The creation of the trust and the transfer of the assets to it were done for the purpose of benefiting an insider, Geryl Pearl, Frank Pearl's wife.

b.      Prior to his death, Frank Pearl retained ostensible possession and complete control of all of the assets transferred to the Perseus Trust.

c.      The creation of the Perseus Trust and the transfer of assets to it was concealed from TD Bank when it made and was considering making the March 13, 2012 credit extensions under circumstances that obligated Frank Pearl to make a full, correct, and complete disclosure to TD Bank.  Rather than disclose, Frank Pearl represented to TD Bank that he owned the assets transferred to the Perseus Trust.

d.      Prior to the creation of the Perseus Trust, Frank Pearl either conveyed assets to himself and Geryl Pearl as tenants by the entireties or acquired assets with Geryl Pearl as tenants by the entireties.  With these assets being held as tenants by the entireties, the transfer by Frank Pearl to the Perseus Trust was a transfer of substantially all of his assets at the time of the transfer.

e.      By knowing he was afflicted with lung cancer that would cause his death in the near future, closing the TD Bank loan on March 13, 2012, failing to advise TD Bank of his medical condition, and then dying on May 4, 2012, Frank Pearl essentially absconded after placing his assets beyond the reach of his creditors.

f.      Besides the transfers to the Perseus Trust, Frank Pearl removed or concealed the actual ownership of other assets he represented as being owned by him, specifically the antiques and art work and the real property.

g.      Frank Pearl submitted to TD Bank knowingly false-financial statements intending that TD Bank rely on them in extending credit based on his guaranty.  In doing so,

22

Frank Pearl defrauded TD Bank into making and then restructuring a loan and committed a Federal felony.

> h.     Frank Pearl received no consideration for the transfer of assets to the Perseus Trust.  The transfer simply depleted the assets he held.

> i.     As demonstrated by the insolvency of his probate estate, Frank Pearl was or became insolvent upon the transfer of the assets to the Perseus Trust upon his death on May 4, 2012.

> j.     As a sophisticated and knowledgeable attorney and financial professional being advised by other sophisticated attorneys and financial professionals, Frank Pearl knew and appreciated what he was doing in transferring the assets to the Perseus Trust and the effect those transfers would have on his financial position and on the ability of his creditors, including TD Bank, to collect the indebtedness due them.

### Count 2
### (Engaging in a Business or Transaction)

61.     TD Bank incorporates by reference the allegations contained in the prior paragraphs of this Complaint.

62.     The creation of the Perseus Trust on December 27, 2011 and the transfer of assets held by Frank Pearl to it for the benefit of Geryl Pearl were done without Frank Pearl receiving a reasonably equivalent value in exchange for the assets transferred and at a time when Frank Pearl was engaged or about to engage in a business or transaction for which his remaining assets were unreasonably small in relation to the business or transaction, as proscribed by D.C. Code § 28-3104(a)(2)(A).

## Count 3
### (Incurring Debts Beyond Ability To Pay)

63.    TD Bank incorporates by reference the allegations contained in the prior paragraphs of this Complaint.

64.    The creation of the Perseus Trust on December 27, 2011 and the transfer of assets held by Frank Pearl to it for the benefit of Geryl Pearl, were done without Frank Pearl receiving a reasonably equivalent value in exchange for the assets transferred.  When Frank Pearl created the Perseus Trust on December 27, 2011 and transferred the assets to it for the benefit of Geryl Pearl, Frank Pearl intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due, as proscribed by D.C. Code § 28-3104(a)(2)(B).

65.    A specific debt Frank Pearl intended to incur that was beyond his ability to pay as it became due was his guaranty obligation of the March 13, 2012 TD Bank credit facilities.

## Count 4
### (Insolvency: 2010 TD Bank Loans)

66.    TD Bank incorporates by reference the allegations contained in the prior paragraphs of this Complaint.

67.    As a result of the loans TD Bank made on September 30, 2010 to Perseus and Frank Pearl's guaranty of these loans, TD Bank was a creditor whose claim existed at the time the Perseus Trust was created on December 27, 2011.

68.    Frank Pearl transferred assets to the Perseus Trust for the benefit of Geryl Pearl without receiving a reasonably equivalent value in exchange for the transfer and was insolvent at that time or became insolvent as a result of the transfer, in contravention of D.C. Code § 28-3105(a).

**Count 5**
**(Insolvency: 2012 TD Bank Loans)**

69.     TD Bank incorporates by reference the allegations contained in the prior paragraphs of this Complaint.

70.     In the event the assets Frank Pearl transferred to the Perseus Trust for the benefit of Geryl Pearl did not vest and constitute a transfer under D.C. Code § 28-3106(1)(B) until Frank Pearl's death on May 4, 2012, TD Bank was a creditor whose claim existed at the time of the transfer because of the loans made by TD Bank on March 13, 2012 to Holdco, as guarantied by Frank Pearl.

71.     Frank Pearl transferred assets to the Perseus Trust for the benefit of Geryl Pearl without receiving a reasonably equivalent value in exchange for the transfer and was insolvent at that time or became insolvent as a result of the transfer, in contravention of D.C. Code § 28-3105(a).

**Antiques and Works of Art**

**Count 6**
**(Declaratory Judgment)**

72.     TD Bank incorporates by reference the allegations contained in the prior paragraphs of this Complaint.

73.     In his December 31, 2009 financial statement given to TD Bank, Frank Pearl stated that he owned antiques and art works worth $65 million.  Frank Pearl reiterated this in his December 31, 2010 financial statement submitted to TD Bank under the requirements of the 2010 Credit Agreement.  Frank Pearl affirmed in the representations and warranties section of the Credit Agreements he executed on September 30, 2010 and March 13, 2012 that these financial statements were correct and complete.  Frank Pearl reinforced the correctness and

completeness of these financial statements as to the antiques and art works by providing TD

Bank with appraisals of antiques and art work stating that the valuation contained in the

appraisals had been done on the property of Frank Pearl.

74.     Geryl Perl has asserted that as of the time of his death, Frank Pearl owned no

antiques and art, all of which was held as tenants by the entireties prior to Frank Pearl's death

and is now owned solely by her.  Despite a request by TD Bank, Geryl Pearl has provided no

substantiation for her ownership of the art and antiques collection or the manner and means and

date by which she acquired it.

75.     TD Bank, accordingly, denies that any of the art or antiques is owned by Geryl

Pearl or that she has any claim to it other than as a beneficiary of Frank Pearl's estate.

76.     An actual controversy exists between the parties that can be resolved by this

Court issuing a declaratory judgment under 28 U.S.C. § 2201.

## Count 7
### (Intent To Hinder, Delay, or Defraud)

77.     TD Bank incorporates by reference the allegations contained in the prior

paragraphs of this Complaint.

78.     The transfer of the art and antiques by Frank Pearl to himself and Geryl Pearl, as

tenants by the entireties, was done with the actual intent to hinder, delay, or defraud Frank

Pearl's creditors, including TD Bank, as proscribed by D.C. Code § 28-3104(a)(1).

79.     Substantial badges of fraud incident to any the transfer of the antiques and art

from Frank Pearl to Frank Pearl and Geryl Pearl as tenants by the entireties exist and

demonstrate Frank Pearl's fraudulent intent.  These badges of fraud include:

a.      The transfer of the antiques and art from individual ownership to tenants by the entireties was done for the purpose of benefiting an insider, Geryl Pearl, Frank Pearl's wife.

b.      Prior to his death, Frank Pearl retained ostensible possession and complete control of all of the antiques and art transferred from individual ownership to tenants by the entireties just as before the transfer.

c.      The transfer of the antiques and art from individual ownership to tenants by the entireties was concealed from TD Bank when it made and was considering making the March 13, 2012 credit extensions under circumstances that obligated Frank Pearl to make a full, correct, and complete disclosure to TD Bank.  Rather than disclose, Frank Pearl falsely represented to TD Bank that he owned the antiques and art he had transferred from individual ownership to tenants by the entireties.

d.      When considered in conjunction with the creation of the Perseus Trust and the assets conveyed to it and the ownership of the various real properties listed on his financial statements as tenants by the entireties, the transfer of the antiques and art from individual ownership to tenants by the entireties conveyed substantially all of Frank Pearl's individual assets.

e.      By knowing he was afflicted with lung cancer that would cause his death in the near future, closing the TD Bank loan on March 12, 2012, failing to advise TD Bank of his medical condition, and then dying on May 4, 2012, Frank Pearl essentially absconded after placing his antiques and art beyond the reach of his creditors.

f.      Besides the transfer of the antiques and art from individual ownership to tenants by the entireties, Frank Pearl removed or concealed the actual ownership of other assets he represented as being owned by him, specifically the assets transferred to the Perseus Trust.

g.      Frank Pearl submitted to TD Bank knowingly false-financial statements intending that TD Bank rely on them in extending credit based on his guaranty.  In doing so, Frank Pearl defrauded TD Bank into making and then restructuring a loan and committed a Federal felony.

h.      Frank Pearl received no consideration for the transfer of the antiques and art from individual ownership to tenants by the entireties.  The transfer simply depleted the assets he held.

i.      As demonstrated by his insolvent-probate estate, Frank Pearl was or became insolvent upon the transfer of the antiques and art from individual ownership to tenants by the entireties when viewed in conjunction with the transfer of assets to the Perseus Trust and the ownership of the various real properties listed on his financial statements.

j.      The transfer of the antiques and art from individual ownership to tenants by the entireties on information and belief occurred in close proximity to TD Bank's extensions of unsecured credit on September 30, 2010 and March 13, 2012.

k.      As a sophisticated and knowledgeable attorney and financial professional being advised by other sophisticated attorneys and financial professionals, Frank Pearl knew and appreciated what he was doing in transferring the antiques and art from individual ownership to tenants by the entireties and the effect the transfer would have on his financial position and on the ability of his creditors, including TD Bank, to collect the indebtedness due them.

**Count 8**
**(Engaging in a Business or Transaction)**

80.     TD Bank incorporates by reference the allegations contained in the prior paragraphs of this Complaint.

81.     The transfer of antiques and art by Frank Pearl to himself and Geryl Pearl, as tenants by the entireties, was done without Frank Pearl receiving a reasonably equivalent value in exchange for the assets transferred and at a time when Frank Pearl was engaged or about to engage in a business or transaction for which his remaining assets were unreasonably small in relation to the business or transaction, as proscribed by D.C. Code § 28-3104(a)(2)(A).

**Count 9**
**(Incurring Debts Beyond Ability To Pay)**

82.     TD Bank incorporates by reference the allegations contained in the prior paragraphs of this Complaint.

83.     The transfer of antiques and art by Frank Pearl to himself and Geryl Pearl, as tenants by the entireties, was done without Frank Pearl receiving a reasonably equivalent value in exchange for the assets transferred.  When Frank Pearl transferred the antiques and art to himself and Geryl Pearl, as tenants by the entireties, Frank Pearl intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due, as proscribed by D.C. Code § 28-3104(a)(2)(B).

84.     A specific debt Frank Pearl intended to incur that was beyond his ability to pay as it became due was his guaranty obligations of the September 30, 2010 and March 13, 2012 TD Bank credit facilities.

**Count 10**
**(Insolvency: 2010 TD Bank Loans)**

85.    TD Bank incorporates by reference the allegations contained in the prior paragraphs of this Complaint.

86.    As a result of the loans TD Bank made on September 30, 2010 to Perseus and Frank Pearl's guaranty of these loans, TD Bank was a creditor whose claim existed at the time of the transfer of art and antiques by Frank Pearl to himself and Geryl Pearl, as tenants by the entireties.

87.    Frank Pearl transferred  the art and antiques to himself and Geryl Pearl, as tenants by the entireties, without receiving a reasonably equivalent value in exchange for the transfer and was insolvent at that time or became insolvent as a result of the transfer, in contravention of D.C. Code § 28-3105(a).

**Count 11**
**(Insolvency: 2012 TD Bank Loans)**

88.    TD Bank incorporates by reference the allegations contained in the prior paragraphs of this Complaint.

89.    As a result of the loans TD Bank made on March 13, 2012 to Perseus Holdco and Frank Pearl's guaranty of these loans, TD Bank was a creditor whose claim existed at the time of the transfer of art and antiques by Frank Pearl to himself and Geryl Pearl, as tenants by the entireties.

90.    Frank Pearl transferred the art and antiques to himself and Geryl Pearl, as tenants by the entireties, without receiving a reasonably equivalent value in exchange for the transfer and was insolvent at that time or became insolvent as a result of the transfer, in contravention of D.C. Code § 28-3105(a).

### Miscellaneous Property

### Count 12
### (Intent To Hinder, Delay, or Defraud)

91.     TD Bank incorporates by reference the allegations contained in the prior paragraphs of this Complaint.

92.     The transfer of the Miscellaneous Property by Frank Pearl to himself and Geryl Pearl, as tenants by the entireties, or in trust for the benefit of Geryl Pearl, or to Geryl Pearl was done with the actual intent to hinder, delay, or defraud Frank Pearl's creditors, including TD Bank, as proscribed by D.C. Code § 28-3104(a)(1).

93.     Substantial badges of fraud incident to the transfer of the Miscellaneous Property by Frank Pearl to himself and Geryl Pearl, as tenants by the entireties, or in trust for the benefit of Geryl Pearl, or to Geryl Pearl exist and demonstrate Frank Pearl's fraudulent intent.  These badges of fraud include:

a.     The transfer of the Miscellaneous Property by Frank Pearl was done for the purpose of benefiting an insider, Geryl Pearl, Frank Pearl's wife.

b.     Prior to his death, Frank Pearl retained ostensible possession and complete control of all of the Miscellaneous Property transferred from his individual ownership.

c.     The transfer of the Miscellaneous Property by Frank Pearl was concealed from TD Bank when it made and was considering making the March 13, 2012 credit extensions under circumstances that obligated Frank Pearl to make a full, correct, and complete disclosure to TD Bank.  Rather than disclose, Frank Pearl represented to TD Bank that he owned the Miscellaneous Property he had transferred from his individual ownership.

d.     When considered in conjunction with the creation of the Perseus Trust and the assets conveyed to it, the titling of the real property listed on Frank Pearl's financial

31

statements as tenants by the entireties, and the ownership of the antiques and works of art, the transfer of the Miscellaneous Property by Frank Pearl conveyed substantially all of Frank Pearl's individual assets.

        e.      By knowing he was afflicted with lung cancer that would cause his death in the near future, closing the TD Bank loan on March 12, 2012, failing to advise TD Bank of his medical condition, and then dying on May 4, 2012, Frank Pearl essentially absconded after placing his Miscellaneous Property beyond the reach of his creditors.

        f.      Besides the transfer of the Miscellaneous Property by Frank Pearl, Frank Pearl removed or concealed the actual ownership of other assets he represented as being owned by him, specifically the assets transferred to the Perseus Trust, the real property, and the antiques and art work.

        g.      Frank Pearl submitted to TD Bank knowingly false-financial statements intending that TD Bank rely on them in extending credit based on his guaranty.  In doing so, Frank Pearl defrauded TD Bank into making and then restructuring a loan and committed a Federal felony.

        h.      Frank Pearl received no consideration for the transfer of the Miscellaneous Property.  The transfer simply depleted the assets he held.

        i.      As demonstrated by his probate estate, Frank Pearl was or became insolvent upon the transfer of the Miscellaneous Property.

        j.      The transfer of the Miscellaneous Property by Frank Pearl on information and belief occurred in close proximity to TD Bank's extensions of unsecured credit on September 30, 2010 and March 13, 2012.

k.    As a sophisticated and knowledgeable attorney and financial professional being advised by other sophisticated attorneys and financial professionals, Frank Pearl knew and appreciated what he was doing in transferring the Miscellaneous Property from his individual ownership and the effect the transfer would have on his financial position and on the ability of his creditors, including TD Bank, to collect the indebtedness due them.

### Count 13
### (Engaging in a Business or Transaction)

94.    TD Bank incorporates by reference the allegations contained in the prior paragraphs of this Complaint.

95.    The transfer of the Miscellaneous Property by Frank Pearl was done without Frank Pearl receiving a reasonably equivalent value in exchange for the assets transferred and at a time when Frank Pearl was engaged or about to engage in a business or transaction for which his remaining assets were unreasonably small in relation to the business or transaction, as proscribed by D.C. Code § 28-3104(a)(2)(A).

### Count 14
### (Incurring Debts Beyond Ability To Pay)

96.    TD Bank incorporates by reference the allegations contained in the prior paragraphs of this Complaint.

97.    The transfer of the Miscellaneous Property by Frank Pearl was done without Frank Pearl receiving a reasonably equivalent value in exchange for the assets transferred.  When Frank Pearl transferred the Miscellaneous Property, Frank Pearl intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due, as proscribed by D.C. Code § 28-3104(a)(2)(B).

98.    A specific debt Frank Pearl intended to incur that was beyond his ability to pay as it became due was his guaranty obligations of the September 30, 2010 and March 13, 2012 TD Bank credit facilities.

### Count 15
### (Insolvency: 2010 TD Bank Loans)

99.    TD Bank incorporates by reference the allegations contained in the prior paragraphs of this Complaint.

100.    As a result of the loans TD Bank made on September 30, 2010 to Perseus and Frank Pearl's guaranty of these loans, TD Bank was a creditor whose claim existed at the time of the transfer of the Miscellaneous Property by Frank Pearl.

101.    Frank Pearl transferred the Miscellaneous Property without receiving a reasonably equivalent value in exchange for the transfer and was insolvent at that time or became insolvent as a result of the transfer, in contravention of D.C. Code § 28-3105(a).

### Count 16
### (Insolvency: 2010 TD Bank Loans)

102.    TD Bank incorporates by reference the allegations contained in the prior paragraphs of this Complaint.

103.    As a result of the loans TD Bank made on March 13, 2012 to Perseus and Frank Pearl's guaranty of these loans, TD Bank was a creditor whose claim existed at the time of the transfer of the Miscellaneous Property by Frank Pearl.

104.    Frank Pearl transferred transfer of the Miscellaneous Property without receiving a reasonably equivalent value in exchange for the transfer and was insolvent at that time or became insolvent as a result of the transfer, in contravention of D.C. Code § 28-3105(a).

**RELIEF REQUESTED**

WHEREFORE, TD Bank requests the following relief:

A.      The entry of a judgment against Geryl Pearl up to the amount owed by Frank Pearl to TD Bank to the extent of the value as of the date of transfer that she received from the assets fraudulently transferred by Frank Pearl directly or beneficially to her, together with the attorneys' fees and litigation expenses that TD Bank is entitled to be awarded and the costs of this action;

B.      The entry of a declaratory judgment pursuant to 28 U.S.C. § 2201 as to the ownership on the date of Frank Pearl's death of the antiques and art work reported by Frank Pearl as owned by him on his financial statements given to TD Bank;

C.      The issuance of a preliminary injunction prohibiting Geryl Pearl from transferring any of the assets transferred to her by Frank Pearl until the entry of final judgment by this Court without an order of Court approving the terms of the transfer, including the disposition of the proceeds of the transfer, to be followed by a permanent injunction prohibiting the transfer of any of the assets transferred to her by Frank Pearl until any judgment entered in favor of TD Bank has been satisfied by her, as authorized by D.C. Code § 28-3107(a)(3)(A);

D.      The Appointment of a receiver to take charge of the assets transferred or of other property of Geryl Pearl, as authorized by D.C. Code § 28-3107(a)(3)(B); and

E.   The grant of such other and further relief as the nature of the case may require, as authorized by D.C. Code § 28-3107(a)(3)(C).

/s/ Lawrence J. Gebhardt
Lawrence J. Gebhardt  Bar #418749
Lisa B. Tancredi  Bar # 449162
Patrick J. Madigan  Bar # 497156
GEBHARDT & SMITH LLP
One South St., Suite 2200
Baltimore, MD 21202
lgebh@gebsmith.com
ltancredi@gebsmith.com
pmadi@gebsmith.com
(410) 385-5100 – phone
(443) 957-1916 – fax

*Attorneys for TD Bank, N.A.*