UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

TD BANK, N.A.,

    Plaintiff,

    v.                                                                Civil Action No. 12-01315 (CKK)

GERYL PEARL,

    Defendant.

MEMORANDUM OPINION
(September 19, 2012)

Plaintiff TD Bank, N.A. ("TD Bank") brings this action against Defendant Geryl Pearl, the surviving spouse of Frank Pearl, asserting claims under the District of Columbia Uniform Fraudulent Transfer Act of 1995 (the "DC-UFTA"), D.C. CODE §§ 28-3101-28-3111. Currently before the Court is TD Bank's [9] Motion for a Preliminary Injunction.[1]  Upon careful consideration of the parties' submissions, the relevant authorities, and the record as a whole, the motion shall be DENIED.[2]

---

[1] With the parties' consent, the Court previously rolled TD Bank's motion for a temporary restraining order into its motion for a preliminary injunction and ordered an expedited briefing schedule. *See* Min. Order (Aug. 29, 2012).

[2] While the Court bases its decision on the record as a whole, its consideration has focused on the following documents: Pl.'s Mem. in Supp. of Mot. for TRO & Prelim. Inj. ("Pl.'s Mem."); Aff. of Brian Monday; Aff. of Brian Haggerty; Aff. of David Bronson; Def.'s Mem. of P. & A. in Opp'n to Mot. for Prelim. Inj. ("Def.'s Opp'n"); Decl. of Thomas W. Richardson in Opp'n to Pl.'s Mot. for Prelim. Inj. ("Richardson Decl."); and Pl.'s Reply to Def.'s Opp'n to Mot. for Prelim. Inj. ("Pl.'s Reply").  In an exercise of its discretion, the Court finds that the motion can and should be decided on the papers and that hearing live testimony and oral argument is not appropriate. *See* LCvR 7(f); LCvR 65.1(d).

# I. BACKGROUND

Geryl Pearl is the surviving spouse of Frank Pearl, who died on May 4, 2012 after suffering from lung cancer. During his lifetime, Mr. Pearl held direct or indirect ownership and management interests in a series of business concerns, including Perseus, L.L.C. (the "LLC"), Perseus Holdco, L.L.C. (the "Holding Company"), and Perseuspur, L.L.C. ("Perseuspur").

On September 30, 2010, TD Bank created a $17.5 million unsecured credit facility for the LLC. *See* Pl.'s Mem., Ex. 1 (Credit Agreement dated Sept. 30, 2010). Mr. Pearl personally guaranteed the loan. *See* Pl.'s Mem., Ex. 4 (Guaranty Agreement dated Sept. 30, 2010). In the process, he provided TD Bank with financial statements reporting a net worth exceeding $420 million as of December 31, 2009, and $380 million as of December 31, 2010. *See* Pl.'s Mem., Exs. 10-11 (Personal Financial Statements). Mr. Pearl represented and warranted that, as of the date of the deal and each advance, all of the financial statements and information he presented to TD Bank were "correct" and "complete" and that he had "good and marketable title to all of his assets." Pl.'s Mem., Ex. 1 (Credit Agreement dated Sept. 30, 2010) ¶ 6(b), (d).

According to TD Bank, sometime in late November 2011, Mr. Pearl learned that he had late-stage lung cancer that was likely to be terminal. *See* Compl. ¶ 10.[3] Shortly thereafter, on or

---

[3] TD Bank has submitted three separate declarations attesting to the truth and accuracy of the 33-page Complaint. Each declaration simply references the allegations in the Complaint and indicates generally that those allegations are "true and correct to the best of the [declarant's] knowledge, information, and belief." The Court doubts that declarations of this kind can constitute competent evidence. Certainly, it would be strange to infer that each of the three declarants has personal knowledge of all of the factual allegations in the Complaint, since that would render them duplicative of one another. And yet TD Bank makes no effort to tether each declarant's personal knowledge with specific factual allegations. It is also reasonably clear that none of the declarants could have personal knowledge of many of the allegations in the Complaint (for example, the date Mr. Pearl learned of his condition). Although the Court considers it well within its discretion to strike all three declarations in their entirety, the Court need not do so, as the end result is the same regardless of whether the declarations are or are not stricken.

about December 21, 2011, Mr. Pearl approached TD Bank seeking to restructure the credit facility. *See* Pl.'s Mem., Ex. 15 (E-mail from F. Pearl to B. Monday *et al.* dated Dec. 21, 2011). Specifically, he proposed that the Holding Company, a newly formed parent of the LLC and a wholly owned subsidiary of Perseuspur, would take the place of the LLC. *See id.* at 1-3. Under the proposal, Mr. Pearl would remain the guarantor. *See id.* TD Bank, however, did not accept Mr. Pearl's proposal at the time. Instead, it was not until March 2012 that the parties reached an agreement tracking Mr. Pearl's proposal.

On December 27, 2011, before the parties reached any agreement on the proposed restructuring, Frank Pearl created the Perseus Trust, a trust that would operate his interests in the LLC and any affiliated entities upon his death and pay the proceeds to Ms. Pearl. *See* Richardson Decl., Ex. 7 (Perseus Trust Agreement dated Dec. 27, 2011). Mr. Pearl retained the unfettered right to amend or revoke the trust during his lifetime. *See id.* art. XV.A. The trust is subject to a "spendthrift" provision, meaning that creditors of Ms. Pearl, but not Mr. Pearl, have a limited ability to reach the trust's assets. *See id.* art. VII.

On May 13, 2012, some time after the creation of the Perseus Trust, TD Bank and Mr. Pearl closed the proposed restructuring deal. The existing credit facility was terminated, and in its place TD Bank created a new credit facility, this time extending a line of credit to the Holding Company in lieu of the LLC. *See* Pl.'s Mem., Ex. 9 (Termination Agreement dated Mar. 13, 2012); Pl.'s Mem., Ex. 5 (Credit Agreement dated Mar. 13, 2012). As before, Mr. Pearl personally guaranteed the loan. *See* Pl.'s Mem., Ex. 9 (Guaranty Agreement dated Mar. 13, 2012). He again represented and warranted that, as of the date of the deal and each advance, all of the financial statements and information he presented to TD Bank were "correct" and

"complete" and that he had "good and marketable title to all of his assets." Pl.'s Mem., Ex. 5 (Credit Agreement dated Mar. 13, 2012) ¶ 6(b), (d).

Mr. Pearl passed away on May 4, 2012. His death was an event of default under the extant credit agreement, and TD Bank therefore became a creditor of Mr. Pearl's estate. *See id.* ¶ 9(m). On June 11, 2012, Ms. Pearl, as the personal representative of Mr. Pearl's estate, filed a petition for unsupervised probate in the Superior Court of the District of Columbia. *See* Pl.'s Mem., Ex. 16 (Petition for Probate dated June 11, 2012). Based on the claims that have been presented to date, it is likely that Mr. Pearl's probate estate will be inadequate to satisfy the claims of all his creditors. *See* Richardson Decl. ¶¶ 6, 17. On July 16, 2012, TD Bank filed a claim against Mr. Pearl's estate in the Superior Court, seeking a total of $16,401,126.42, excluding interest, attorneys' fees, and costs. *See* Richardson Decl., Ex. 18 (Claim Against the Decedent's Estate dated July 16, 2012). That figure mirrors the amount of the money judgment that TD Bank intends to seek against Ms. Pearl in this case.

## II.  LEGAL STANDARD

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 21 (2008). A plaintiff seeking a preliminary injunction must establish that (1) it is likely to succeed on the merits, (2) it is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of the equities tips in its favor, and (4) an injunction would be in the public interest. *Id.* at 20. Historically, these four factors have been evaluated on a "sliding scale" in this Circuit, such that a stronger showing on one factor could make up for a weaker showing on another. *See Davenport v. Int'l Bhd. of Teamsters, AFL-CIO*, 166 F.3d 356, 360-61 (D.C. Cir. 1991). Recently, the continued viability of that approach has been called into some

doubt, as the United States Court of Appeals for the District of Columbia Circuit has suggested, without holding, that a likelihood of success on the merits is an independent, free-standing requirement for a preliminary injunction. *See Sherley v. Sebelius*, 644 F.3d 388, 392-93 (D.C. Cir. 2011); *Davis v. PBGC*, 571 F.3d 1288, 1292 (D.C. Cir. 2009).  However, absent binding authority or clear guidance from the Court of Appeals, the Court considers the most prudent course to bypass this unresolved issue and proceed to explain why a preliminary injunction is not appropriate under the "sliding scale" framework.  If a plaintiff cannot meet the less demanding "sliding scale" standard, then it cannot satisfy the more stringent standard alluded to by the Court of Appeals.

### III. DISCUSSION

TD Bank contends that the creation and funding of the Perseus Trust by Frank Pearl effected a fraudulent transfer under the DC-UFTA.  *See* D.C. CODE § 28-3104(a)(1), 3105(a). Eventually, it intends to seek a money judgment against Geryl Pearl, as the beneficiary of the Perseus Trust, for the full amount of its claim against Mr. Pearl—that is, approximately $16.4 million.  *See id.* § 28-3108(b)(1).  At present, however, TD Bank comes to this Court seeking the "extraordinary relief" of a preliminary injunction.  *Winter*, 555 U.S. at 21.  Specifically, TD Bank asks the Court to enjoin Ms. Pearl from selling, transferring, encumbering, or in any other way disposing of any assets or property that she acquired from Frank Pearl, either individually prior to his death or as the surviving spouse upon his death, without prior written authorization from TD Bank or the Court approving the terms of the transaction.  *See* Pl.'s Proposed Preliminary Injunction at 4-5.  The injunction would cover an uncertain universe of real estate,

artwork, and antiques held by Ms. Pearl. On the record presented,[4] the Court concludes that TD Bank has failed to make a "clear showing" that it is entitled to such relief. *Winter*, 555 U.S. at 21. Accordingly, its [9] Motion for a Preliminary Injunction shall be DENIED.

    A.    *TD Bank Has Failed to Demonstrate a Likelihood of Success on the Merits*

Although TD Bank's Complaint sets forth no less than sixteen claims, *see* Compl. ¶¶ 58-104, its Motion for a Preliminary Injunction rises and falls on a single claim, and two theories, under the DC-UFTA. Specifically, TD Bank contends that the creation and funding of the Perseus Trust was actually fraudulent under D.C. CODE § 28-3104(a)(1) and constructively fraudulent under D.C. CODE § 28-3105(a).[5] *See* Pl.'s Mem. at 11-18; Pl.'s Reply at 7-11. Regardless of the theory employed, TD Bank bears the burden of proof, and it has not shown that it is likely to carry that burden on this record.

---

[4] The Court's opinion today is, as a matter of necessity, based solely on the record presented at this early procedural posture. Nothing herein should be construed as foreclosing the parties from revisiting certain arguments, when appropriate, upon further development of the record.

[5] The Court recognizes that TD Bank also claims—in passing and without citing to any evidence—that transfers of an unidentified universe of artwork and antiques were fraudulent under the DC-UFTA. *See* Pl.'s Mem. at 18-19; Pl.'s Reply at 12-14. However, TD Bank's papers make it painfully clear that it cannot establish a likelihood of success on the merits with respect to these alleged transfers. Indeed, TD Bank concedes that it does not even know "when and under what circumstances these assets were transferred to Geryl Pearl." Pl.'s Mem. at 18; *see also* Pl.'s Reply at 13. Despite TD Bank's intimation to the contrary, even "[a]t this incipient stage of the proceedings," Pl.'s Mem. at 19, its vague and unsubstantiated innuendo is no substitute for showing that it is likely to succeed on the merits. A preliminary injunction is "an extraordinary remedy," and TD Bank bears the burden of making a "clear showing that [it] is entitled to such relief." *Winter*, 555 U.S. at 21. In this regard, it simply has not done so. On a separate but similar note, TD Bank periodically intimates that it may have additional claims or theories that are viable under the DC-UFTA. *See, e.g.*, Pl.'s Mem. at 12. Suffice it to say that TD Bank does not couple its intimations with any meaningful factual or legal analysis. Courts need not consider cursory arguments of this kind, and the Court declines to do so here. *Cf. Hutchins v. District of Columbia*, 188 F.3d 531, 539 n.3 (D.C. Cir. 1999) (en banc); *GSS Grp. Ltd. v. Nat'l Port Auth.*, 680 F.3d 805, 812 (D.C. Cir. 2012).

        1.       TD Bank Has Failed to Demonstrate that it is Likely to Succeed on its Claim that the Creation and Funding of the Perseus Trust Was "Actually Fraudulent" under D.C. CODE § 28-3104(a)(1)

Under the DC-UFTA, a transfer is actually fraudulent "if the debtor made the transfer . . . [w]ith actual intent to hinder, delay, or defraud any creditor." D.C. CODE § 28-3104(a)(1). In determining whether the debtor acted with the requisite intent, courts often look to eleven factors, commonly referred to as "badges of fraud." *See id.* § 28-3104(b). These factors, which are illustrative and not limiting, "may be relevant evidence of the debtor's actual intent, but they do not create a presumption that the debtor has made a fraudulent transfer." UNIF. FRAUDULENT TRANSFER ACT § 4 cmt. 5.

The Court has carefully considered each of these eleven factors. Some are quite obviously inapplicable to the facts of this case, despite TD Bank's attempts to fit a square peg into a round hole (for example, by cheekily suggesting that Mr. Pearl "absconded" by passing away after suffering from lung cancer). *See* D.C. CODE § 28-3104(b)(2), (b)(4), (b)(6), (b)(10), (b)(11). Others may, upon further development of the factual record, at least arguably provide some support for TD Bank's claim. *See id.* § 28-3104(b)(1), (b)(5), (b)(8). Nonetheless, the Court finds that, on balance, one overarching set of considerations is so central to this case that it prevents TD Bank, at this stage of the proceedings, from establishing a likelihood that it will ultimately succeed on the merits of its claim.

Significantly, the Perseus Trust was, at the time of Mr. Pearl's death, revocable. *See* Richardson Decl., Ex. 7 (Perseus Trust Agreement dated Dec. 27, 2011) art. XV.A. Under the District of Columbia Uniform Trust Code, "the property of a trust that was revocable at the settlor's death *is subject to claims of the settlor's creditors* . . . to the extent the settlor's residuary probate estate is inadequate to satisfy those claims." D.C. CODE § 19-1305.05(a)(3)

(emphasis added).[6]  This provision "recognizes that a revocable trust is usually employed as a will substitute," and "[a]s such, the trust assets, following the death of the settlor, should be subject to the settlor's debts."  UNIF. TRUST CODE § 505, cmt.

The upshot is that the creation and funding of the Perseus Trust did not subtract from the assets actually available to Mr. Pearl's creditors.  Before and after the transfer, the universe of reachable assets remained, for all practical purposes, exactly the same.  For this reason, it is strange that TD Bank insists on arguing that Mr. Pearl, who by TD Bank's own account was a highly sophisticated financial actor, somehow intended to stymie the claims of creditors when he created the Perseus Trust.  If that was Mr. Pearl's intent, there were far better tools at his disposal than a revocable trust, which, to reiterate, did not and could not operate to shield assets from the claims of his creditors under District of Columbia law.  To the contrary, the weight of the evidence in the record would lead a reasonable factfinder to conclude—consistent with the principle that a revocable trust is a perfectly valid and appropriate estate management tool—that Mr. Pearl simply intended to fashion a structure for the efficient and orderly transfer of his ownership and management interests upon his death.  *See, e.g.*, Richardson Decl. ¶¶ 9-10 & Ex. 7 (Perseus Trust Agreement) art. III.A.

Nor is the Court persuaded by TD Bank's suggestion that Mr. Pearl concealed the transfer of assets to the Perseus Trust.  *See* D.C. CODE § 28-3104(b)(3), (b)(7).  As an initial matter, TD Bank elides over the critical difference between concealment and the absence of public disclosure; few people are likely to publicly disclose their estate management plans, or have any reason to do so.  In any event, as TD Bank concedes, the Perseus Trust was subject to

---

[6]  Although the Perseus Trust is subject to a "spendthrift" clause, that clause only limits the ability of Ms. Pearl's creditors to reach the trust's assets.  Mr. Pearl's creditors are not so inhibited.  *See* D.C. CODE § 19-1305.05(a).

amendment and revocation during Mr. Pearl's lifetime; no assets were actually transferred until his death. *See* Pl.'s Mem. at 4. Upon his death, the trustees of the Perseus Trust filed a notice in the Superior Court alerting interested parties to the existence of the trust and affirmatively indicating that it "is subject to claims of [Mr. Pearl's] creditors . . . to the extent [his] residuary probate estate is inadequate to satisfy those claims." Def.'s Opp'n, Ex. B (Notice of Existence of Revocable Trust dated Sept. 5, 2012) at 1. In short, not only does the law render the assets of the Perseus Trust available to Mr. Pearl's creditors, but the trustees have publicly said as much. No assets have been concealed.

Under these circumstances, the Court concludes that TD Bank has failed to show a likelihood of success on the merits of its claim that the creation and funding of the Perseus Trust was actually fraudulent under D.C. CODE § 28-3104(a)(1).

> 2.   TD Bank Has Failed to Demonstrate that it is Likely to Succeed on its Claim that the Creation and Funding of the Perseus Trust Was "Constructively Fraudulent" Under D.C. CODE § 28-3105(a)

Under the DC-UFTA, a transfer is constructively fraudulent if, *inter alia*, "the debtor made the transfer . . . without receiving a reasonably equivalent value in exchange . . . and the debtor was insolvent at that time or . . . became insolvent as a result." D.C. CODE § 28-3105(a). The central aim of this provision is to prevent debtors from making transfers that, regardless of the underlying intent, deplete the assets available to creditors. And consistent with this aim, the overarching question, distilled to its essence, is whether sufficient assets remain after a transfer to allow the debtor to "make good" on his debts.

In this case, the problem for TD Bank is that the transfer of assets from Mr. Pearl to the Perseus Trust did not make those assets any more or less available to Mr. Pearl's creditors. As explained above, because the Perseus Trust was a revocable trust, in the event Mr. Pearl's probate estate is "inadequate" to satisfy the claims of creditors, which at this point seems likely,

then the property of the Perseus Trust "is subject to claims of [his] creditors." D.C. CODE § 19-1305.05(a)(3). In other words, practically speaking, the creation and funding of the Perseus Trust in no way subtracted from the assets available to Mr. Pearl's creditors upon his death. The same assets remain reachable by creditors, including TD Bank. On this record, the Court concludes that TD Bank has failed to show a likelihood of success on the merits of its claim that the creation and funding of the Perseus Trust was constructively fraudulent under D.C. CODE § 28-3105(a). *Cf. Matthews v. Serafin*, 744 N.E.2d 934, 937 (Ill. App. 2001).

When a party seeks the extraordinary remedy of a preliminary injunction, "[i]t is particularly important for [that party] to demonstrate a likelihood of success on the merits." *Konarski v. Donovan*, 763 F. Supp. 2d 128, 132 (D.D.C 2011). Because TD Bank has failed to make such a showing here, this factor weighs against the issuance of a preliminary injunction.

    B.    *TD Bank Has Failed to Demonstrate Irreparable Harm*

TD Bank also bears the burden of "demonstrat[ing] that irreparable injury is *likely* in the absence of an injunction," and not a mere possibility. *Winter*, 555 U.S. at 22 (emphasis in original). The injury identified must "be both certain and great; it must be actual and not theoretical." *Wisconsin Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985). For at least two reasons, TD Bank has not met its burden here.[7]

---

[7] The Court need not resolve the question of whether, in this context, TD Bank must establish that the denial of a preliminary injunction would cause extreme hardship to its business. *See Coal. for Common Sense in Gov't Procurement v. United States*, 576 F. Supp. 2d 162, 168 (D.D.C. 2008) ("To successfully shoehorn potential economic loss into a showing of irreparable harm, a plaintiff must establish that the economic harm is so severe as to cause extreme hardship to the business or threaten its very existence.") (quotation marks omitted). Nonetheless, the Court notes that TD Bank concedes that it cannot make this showing. *See* Pl.'s Reply at 17. The concession is unsurprising, given that TD Bank is one of the ten largest banks in the United States with assets exceeding $200 billion. *See* Def.'s Opp'n, Ex. A (Business Profile dated July 31, 2012).

First, TD Bank has other adequate remedies at its disposal besides the extraordinary remedy of a preliminary injunction. *See* 11A Charles Alan Wright *et al.*, FEDERAL PRACTICE & PROCEDURE § 2948.1 ("A preliminary injunction usually will be denied if it appears that the applicant has an adequate alternative remedy in the form of money damages or other relief."). As previously explained, District of Columbia law is clear: in the event an individual's probate estate is "inadequate" to satisfy the claims of creditors, then "the property of a trust that was revocable at [the individual's] death is subject to claims of [his] creditors." D.C. CODE § 19-1305.05(a)(3). Following Mr. Pearl's death, the trustees of the Perseus Trust filed a notice in the Superior Court alerting interested parties to the existence of the trust and indicating that it "is subject to claims of [Mr. Pearl's] creditors." Def.'s Opp'n, Ex. B (Notice of Existence of Revocable Trust dated Sept. 5, 2012) at 1. That step opened the door for interested creditors, like TD Bank, to file claims against the revocable trust. *See* Superior Court of the District of Columbia, Probate Rule 213(a); *see also* Pl.'s Mem. at 4 (conceding that "creditors [can] sue the Trustees of the Perseus Trust to collect the debts that would have been paid as a matter of course in Frank Pearl's probate estate had the assets transferred to the Perseus Trust remained in his name at the time of his death"); Pl.'s Reply at 8 (conceding that "[t]he trustees can [] pay Frank Pearl's creditors if the creditors file suit to enforce their respective rights"). Indeed, TD Bank has already filed a claim against Mr. Pearl's probate estate seeking the monetary relief it would be entitled to in this case. *See* Richardson Decl., Ex. 18 (Claim Against the Decedent's Estate dated July 16, 2012). In the event the probate estate is inadequate to satisfy TD Bank's claim, then TD Bank has the ability to seek relief from the Perseus Trust within the context of the Superior Court proceedings. *See* Superior Court of the District of Columbia, Probate Rule 213(e), (f). Despite TD Bank's unsubstantiated innuendo to the contrary, it has presented no

11

competent evidence to contradict that the trust's assets will be more than sufficient to satisfy the claims of Mr. Pearl's creditors, including TD Bank, and then some.

Second, here, TD Bank seeks an injunction preventing Ms. Pearl from disposing of certain assets without TD Bank's or the Court's prior written approval. In support, TD Bank speculates that "all of the assets that could be used to satisfy a judgment in favor of TD Bank will be gone and beyond the reach of creditors by the time TD Bank receives a judgment." Pl.'s Mem. at 9. TD Bank even goes so far as to suggest, evidently without any basis in fact, that Ms. Pearl might "put the proceeds . . . in a Cook or Channel Island Trust." *Id.* at 23. But TD Bank concedes that it does not know which assets, if any, Ms. Pearl may seek to sell in the near future, and, more to the point, it acknowledges that it does not "know of her plans for the proceeds of the sales." *Id.* at 7. Even assuming that Ms. Pearl has sold or plans to sell some of her assets (an entirely unremarkable occurrence), TD Bank presents this Court with no competent evidence— none—that she is selling those assets for anything less than their fair value or is dissipating, concealing, or otherwise secreting any assets to put them beyond the reach of creditors. On this record, it is just as likely that Ms. Pearl is making a small number of *bona fide* sales to third parties and simply trading one set of valuable assets for another, which will remain reachable in the event TD Bank ultimately prevails in this case. TD Bank's unsubstantiated fear is no substitute for a showing that "irreparable injury is *likely* in the absence of an injunction," and not a mere possibility. *Winter*, 555 U.S. at 22 (emphasis in original).

"A showing of irreparable harm is the *sine qua non* of the preliminary injunction inquiry." *Trudeau v. FTC*, 384 F. Supp. 2d 281, 296 (D.D.C. 2005) (emphasis added), *aff'd*, 456 F.3d 178 (D.C. Cir. 2006). TD Bank has failed to make the requisite showing here. Accordingly, this factor also weighs against the issuance of a preliminary injunction.

  C. *TD Bank Has Failed to Demonstrate that the Balance of the Equities or the Public Interest Favor Issuance of a Preliminary Inunction*

Finally, a plaintiff seeking a preliminary injunction must establish that the balance of the equities tips in its favor, and an injunction would be in the public interest. *Winter*, 555 U.S. at 20. The Court doubts that even the most compelling showing on these fronts could make up for TD Bank's failure to demonstrate a likelihood of success on the merits or irreparable harm. But regardless, the equities and the public interest are, at best, in equipoise. Therefore, even affording TD Bank the most generous inference possible, these factors weigh neither for nor against issuance of a preliminary injunction.

## IV. CONCLUSION

Considering the record as a whole, the Court finds that TD Bank has failed to make a "clear showing" that it is entitled to the "extraordinary remedy" of a preliminary injunction. *Winter*, 555 U.S. at 21. Therefore, and for the reasons set forth above, TD Bank's [9] Motion for a Preliminary Injunction shall be DENIED. An appropriate Order accompanies this Memorandum Opinion.

Date: September 19, 2012

                _____/s/_____
                **COLLEEN KOLLAR-KOTELLY**
                United States District Judge